ELIZA RALSTON ET AL. V. CHARLES SKERRETT ET AL.

No. 6965.

1. **Statute Construed—Validating Act—Vendee.**—The Act of March 31, 1883, provided "that all surveys and patents by virtue of headright or bounty warrants issued under special laws enacted after March 31, 1870, and prior to April 11, 1876, * * * are hereby validated and confirmed; * * * provided further, that this act shall only apply to soldiers and heirs and actual settlers of Texas and their vendees to whom lands have been granted." Gen. Laws 1883, p. 38. This act is held to inure to the benefit of parties holding under a warranty deed from the original grantee to whom the invalid certificate had been granted, and that his heirs took nothing under the act, even if the act be construed as a bounty.

2. **Cases Discussed.**—McKinney v. Brown, 51 Texas, 96; Eastland v. Lester, 15 Texas, 102; Causici v. La Coste, 20 Texas, 286; and Todd v. Masterson, 61 Texas, 618, discussed.

3. **Cases Adhered to.**—Hines v. Thorn, 57 Texas, 98, and Blum v. Looney, 69 Texas, 4, adhered to.

4. **Validating Act.**—In an act validating a grant to a person once entitled to such a grant who had lost that right when the grant was made, the declaration that it should inure to the benefit of the person originally entitled, his heirs or vendees, necessarily gave title to the vendee of the person through whom the heir would take by inheritance, for the sale would leave nothing for the heir to inherit.

APPEAL from Clay. Tried below before Hon. P. M. STINE.
The opinion states the case.

*Davis & Harris,* for appellants.—1. The court erred in holding that the Special Act of April 26, 1873, under which the certificate issued to M. B. Skerrett, was unconstitutional and void. Bacon v. Russell, 57 Texas, 415; Holmes v. Anderson, 59 Texas, 482; Bates v. Bacon, 66 Texas, 348; Blum v. Looney, 69 Texas, 1.

2. The court erred in holding that the confirmation of the grant by virtue of the M. B. Skerrett certificate did not inure to the benefit of Thomas Price, the patentee, but to the heirs of said M. B. Skerrett. Gen. Laws 18th Leg., p. 38; Robinson v. Douthitt, 64 Texas, 101; Rawle on Covenants, 404, 427–446; 3 Washb. Real Prop., 399, 407.

3. The court erred in holding that the law of stale demand did not avail the appellants, the heirs of Thomas Price, the patentee. Hines v. Thomas, 57 Texas, 98; Carlisle v. Hart, 27 Texas, 350; Connolly v. Hammond, 51 Texas, 648; Lewis v. Cole, 60 Texas, 341; Parker v. Spencer, 61 Texas, 155; McMasters v. Mills, 30 Texas, 591; Montgomery v. Noyes, 73 Texas, 203.

*W. G. Eustis,* for appellees.—1. The Special Act of the Legislature passed April 26, 1873, granting to M. B. Skerrett a certificate for one-third of a league of land in lieu of certificate No. 36, issued by the board of land commissioners of Travis County, Texas, on the 5th day of April,

1841, and the certificate issued thereunder and the survey made by virtue thereof, and the patent issued to Thomas Price, November 6, 1874, by virtue of said certificate and survey, were unconstitutional, null, and void.    Const. 1870, art. 10, sec. 6; Special Acts 1873, pp. 306, 307; Bacon & Bates v. Russell, 57 Texas, 409; Holmes v. Anderson, 59 Texas, 481; Bates & Bacon v. Russell, 66 Texas, 348; White v. Martin, 66 Texas, 341; Blum v. Looney, 69 Texas, 1.

2.    The Special Act of April 26, 1873, granting the certificate to Mark B. Skerrett for one-third of a league of land in lieu of certificate No. 36, had the same been constitutional and valid, was purely a gift or donation to the heirs of said Skerrett on the part of the government, Skerrett being dead when said special act was passed, which did not inure to the benefit of Horace W. Robins as assignee of the original void certificate; his right as assignee of the original not having been protected in the special act granting the second certificate.    McKinney v. Brown, 51 Texas, 96; Hines v. Thorn, 57 Texas, 98; Bates v. Bacon, 66 Texas, 349; Blum v. Looney, 69 Texas, 1; Gen. Laws 18th Leg., p. 38.

3.    A land certificate that has been issued by persons who had no authority to act at the time it was issued, that was never recommended by any of the boards appointed to detect fraudulent land certificates, nor established by suit, is void, and could not be made the foundation of a right.    Pasch. Dig., art. 4133; Const. 1845, art. 11, sec. 2; Miller v. Brownson, 50 Texas, 595; Holmes v. Johns, 56 Texas, 51; White v. Martin, 66 Texas, 341.

In brief on motion for rehearing counsel cited the additional authorities:  McIntyre v. De Long, 71 Texas, 88; Pasch. Dig., art. 222; Robinson v. Douthitt, 64 Texas, 105, 106; James v. Adams & Wicks, 64 Texas, 196; Richardson v. Levi, 67 Texas, 364; Flaniken v. Neal, 67 Texas, 633; Peck v. Hensley, 20 Texas, 676; Davenport v. Lamb, 13 Wall., 418 (80 U. S., 657); Young v. Chippinger, 14 Kans., 148; Allen v. Holton, 20 Pick., 458; Comstock v. Smith, 13 Pick., 119; Howe v. Harrington, 18 N. J. Eq., 496; Hoxie v. Finney, 16 Gray, 332; Blanchard v. Brooks, 12 Pick., 65; Miller v. Ewing, 6 Cush., 34; Sewing Machine Co. v. Emerson, 115 Mass., 554; 2 Mora. on Corp., sec. 604; 1 Dan. on Neg. Ins., 742, 748a; Herm. on Est., secs. 287, 288; Jones on Chat. Mort., secs. 513, 519; Martindale on Conv., ed. 1882, sec. 169, p. 136; Id., sec. 171, p. 141; Bish. on Conv., sec. 277; Tied. on Real Prop., sec. 858; Sedg. & Wait's Trial of Title to Land, sec. 850.

STAYTON, CHIEF JUSTICE.—A re-examination of this case satisfies this court that the disposition heretofore made of it on the report of the Commission of Appeals was erroneous, and the motion for rehearing will be sustained.

The action was brought by the heirs of M. B. Skerrett to recover 1209½ acres of land patented to Thomas Price on November 6, 1874, and appellants other than Mrs. Ralston claim through regular chain of title from the patentee.

There is no statement of facts, but from the conclusions of fact found by the court it appears that M. B. Skerrett was a volunteer soldier in the army of the Republic of Texas, and under the Act of December 14, 1837, was entitled to a headright of one-third of a league of land, and that under the right conferred by that act an unconditional certificate issued to him on April 5, 1841. This certificate was issued by the proper authority in Travis County, and was numbered 36, but was never approved by the land board nor established by suit. On July 8, 1849, Skerrett conveyed this certificate, together with the land on which it was then located, to Robins & Co., by a deed which warranted the title to the certificate as well as the land on which it was located, and this deed recited a consideration of $500 paid. On May 30, 1866, Robins & Co. conveyed that certificate and the land on which it had been located to Horace W. Robins. Under a Special Act of the Legislature passed April 26, 1873, the Commissioner of the General Land Office issued to M. B. Skerrett a certificate for one-third of a league of land as his headright, and this Horace W. Robins conveyed to Thomas Price, on June, 28, 1873.

The certificate last named is that by virtue of which the land in controversy was surveyed and patented to Price, and so much of the special act under which it was issued as has any application to it is as follows:

"Be it enacted by the Legislature of the State of Texas: That the Commissioner of the General Land Office be and he is hereby authorized and required to issue the following named land certificate, to-wit, * * * to M. B. Skerrett, one-third of a league headright, to which he is entitled as a volunteer, in lieu of No. 36, issued in Travis County."

Under the former decisions of this court that act was inoperative for want of power in the Legislature, under the Constitution then in force, to enact it. Bacon v. Russell, 57 Texas, 415; Holmes v. Anderson, 59 Texas, 482; Bates v. Bacon, 66 Texas, 384; Blum v. Looney, 69 Texas, 1.

On March 31, 1883, the Legislature passed the following act:

"Be it enacted by the Legislature of the State of Texas: That all surveys and patents by virtue of headright or bounty warrants issued under special laws enacted after March 31, 1870, and prior to April 11, 1867, to which there is no valid legal objection other than that such special laws are supposed to be in conflict with the Constitution then in force, are hereby validated and confirmed, and declared to be as binding upon the State as they otherwise would be if such special laws had been permitted by the Constitution; provided, that if such headright or bounty certificate had been forfeited under existing laws by location and survey on appropriated land, this act shall not be con-

strued to revive the same; provided further, this act shall only apply to soldiers and heirs and actual settlers of Texas and their vendees to whom lands have been granted."    Gen. Laws 1883, p. 38.

On the construction of this act depends the rights of the parties. It will be observed that this act validates *all surveys and patents* by virtue of certificates issued under special laws enacted between the dates named, in so far as their invalidity depended on want of power in the Legislature to pass the special laws, and they are declared *to be as binding upon the State as they otherwise would be if such special laws had been permitted by the Constitution,* unless under one of the provisos they were excluded from the operation of the act.

The effect of this act is to give vitality to such surveys and patents as could be covered by the act from the time it took effect, and there is no fact shown which under the first proviso would withdraw the survey and patent in question from the validating operation of the act. This all parties claiming through M. B. Skerrett must concede, for otherwise none of them have any right. M. B. Skerrett died a short time before the Act of April 26, 1873, was passed, and it did not direct that a certificate issue to his heirs or assignee, but only to him; but it is believed that the Act of March 31, 1883, cures any invalidity which might result from the fact that he died before the passage of either of the acts, for the validating act recognizes the rights of heirs and vendees.

The real question in this case is, To whom does the benefit of the validating act inure? Appellees contend that it inures solely to their benefit as heirs of M. B. Skerrett, and appellants contend that it inures to those who claim through regular chain of transfer the original right M. B. Skerrett had to a headright grant.

In the case of McKinney v. Brown, 51 Texas, 96, it appeared that a headright certificate issued to a colonist of Austin's colony, and that he transferred it to Josiah H. Bell, but that it was not recommended by any of the boards appointed under the acts to detect fraudulent certificates, nor was it established by suit. The colonist having died, in 1856 the Legislature by special act directed a certificate to issue to his *heirs,* and a contest arose between these heirs and the heirs of Bell as to the title to the land patented under the certificate directed by the special act to issue to the *heirs* of the colonist. Under this state of facts, it was held that the special act conferred a mere gratuity, and that this being given expressly to the heirs conferred title on them alone. The following cases illustrate the same rule: Eastland v. Lester, 15 Texas, 102; Causici v. La Coste, 20 Texas, 286; Todd v. Masterson, 61 Texas, 618.

In the case of Hines v. Thorn, 57 Texas, 98, it appeared that a few days after the Land Office was closed by the decree of the Consultation title issued to Hines for a league of land, but this grant was void be-

cause issued in violation of law. Through conveyances from Hines title to this claim vested in Thorn; and it having been decided that such grants were void, the Legislature in 1856, by special act, directed the Commissioner of the General Land Office to issue a patent to the league of land, or so much thereof as had not been adversely appropriated, and to issue a certificate for the residue of said league of land, if any there should be, which might be located and patented on any of the unappropriated lands of the State. The act, however, provided, that if Hines had ever sold or conveyed any part of the land authorized to be patented to him, then the title authorized to be issued should issue to and vest title in the land in the vendee or vendees, their heirs or assigns. Certificate issued under this act was located on three tracts of land, and patents to them issued to the heirs of Thorn, and in a controversy between Hines and the heirs of Thorn it was held that right in the land was in the latter. In disposing of the case it was said, that "It was evidently the primary object of the Legislature to recognize the validity of the original claim of Allen Hines for land, notwithstanding the invalidity of the title issued by Commissioner Smyth, and as far as consistent with the rights of third parties to cure this defect by vesting into him or his assignees a perfect title to the land. * * * The statute did not in terms give title to the assignees of Allen Hines to the certificate, if it became necessary to issue one, but in our opinion this was the intention of the Legislature."

The special act in question does not belong to the class first referred to, and the inquiry arises whether there is anything in the Act of March 31, 1883, which shows that it was not intended thereby to vest title in such persons as may have purchased from M. B. Skerrett his original claim to land. There was no legal obligation resting upon the State to give the relief given by the act last referred to, and it may be said that it was in this respect gratuitous; but it does not follow from this that the heirs of Skerrett became entitled to the land patented under the certificate issued under the Special Act of April 26, 1873; and if there be that in the Act of March 31, 1883, indicating that purchasers of the original claim of Skerrett should take under it, then so it must be.

The body of the act last referred to refers only to *surveys and patents* by virtue of *headright and bounty warrants,* which at all times were issued only to soldiers and actual settlers; and it may be conceded, for the purposes of this case, if nothing further appeared in the act, that as the act confirmed by it directed the certificate to issue to M. B. Skerrett alone, mentioning neither heirs nor vendees, that the latter could not take under it.

The last proviso is as follows: "This act shall only apply to soldiers and heirs and actual settlers of Texas and their vendees to whom lands have been granted." The purpose of this was not to declare the character of claims the act was intended to confirm, for this had been done

in the former part of the act, but was for the purpose of determining who should be beneficiaries under the act, as well as to require proof, outside of the acts confirmed, that the persons who were to take benefit were either soldiers or actual settlers of Texas, or the heirs or vendees of such soldiers or settlers.

In Blum v. Looney, 69 Texas, 4, this proviso was considered, and in the opinion it was said: "It can not be claimed that any other persons except such as are named in the proviso are entitled to the benefit of the confirming act. The whole object of the act is to benefit them, and the fact that a claimant of land belongs to one of these classes of persons is in the nature of a condition precedent to his right to the land granted. Had the certificates never been issued under the former acts, and the healing statute had validated those acts with a proviso like that under consideration, it is very clear that the Commissioner of the General Land Office would have no right to issue the certificates without proof that the applicant possessed the qualifications therein prescribed. It would be unreasonable to contend that because the applicant was named in .the act he was to receive the certificate unless the Commissioner could show that he did not possess the proper qualifications. In the cases provided for in the act the certificates, and perhaps the patents, had already issued, but they were null and void. The new act called them into life upon certain conditions. Compliance with these conditions was as necessary to impart rigor to the surveys and patents as it would have been originally to call into existence the warrants and certificates upon which they were based. In fact, the statute must be read as if it in terms validated and confirmed only such surveys and patents by virtue of headright and bounty warrants as had been issued under the special acts named for the benefit of soldiers and heirs and actual settlers and their vendees."

The word "vendees," used in the proviso, we are of opinion means vendees of a soldier, actual settler, or of the heirs of such soldier or actual settler, and there is nothing in the proviso which confines the word to such persons as may have purchased from the soldier, actual settler, or the heirs of either, after the passage of the Act of April 26, 1873. The validation or confirmation is to the vendees of those "to whom lands have been granted;" or, in other words, to the vendees of those to whom the acts validated declared lands should be given, if the vendor was shown to have been a soldier or actual settler of Texas entitled to such grants at one time under the laws regulating that matter, or the heir of such soldier or actual settler.

In an act validating a grant to a person once entitled to such a grant, who had lost that right when the grant was made, the declaration that it should inure to the benefit of the person originally entitled, his heirs, or vendees, would necessarily give title to the vendees of the person through whom the heir could take by inheritance, for the sale would

leave nothing for the heir to inherit; and under such an act the vendee of an heir would of course take.

There is further in the Act of March 31, 1883, that which shows that it was intended thereby not only to bestow a gratuity in validating a grant which the beneficiary had no legal right to demand, but to recognize and revive the original right, and this the Legislature had power to do. Blum v. Looney, 69 Texas, 3. The first proviso declares, that "If such headright or bounty certificates had been forfeited under existing laws by location and survey on appropriated land, this act shall not be construed *to revive* it," and the implication is that if not thus forfeited the intent was to revive the original right; and it would seem necessarily to follow, in cases in which a derivative claim such as that of a vendee or heir is recognized in connection with that of the person originally entitled, that the intent of the Legislature was to revive the original right rather than to create a new one.

If we may look to the Act of April 26, 1873, for the intention of the Legislature, which it would seem proper to do, because the confirming act in effect validates that, except that it imposes the conditions and restrictions found in the latter act, then the intent of the Legislature in this respect would be clear, for the former act directed a certificate to issue "to M. B. Skerrett (for) one-third of a league headright to which he is entitled as a volunteer, in lieu of number 36, issued in Travis County." The original certificate numbered 36, and issued in Travis County, evidenced the original right, and it would seem that a certificate *in lieu* of that would but evidence the same right.

In Bacon v. Russell, it did not appear that the latter under any law, prior to the act under which the certificate issued, was ever entitled to land; but prior to the passage of the Act of March 31, 1883, the land which had been patented to Russell by virtue of the certificate issued under the special law was sold under execution against him. And in the case of Bates v. Bacon, 66 Texas, 348, the title of the purchaser at that sale was in issue, and he claimed that the Act of March 31, 1883, validated his title; but it was held that as Russell had no title at the time of the sale the purchaser took nothing. The decision was manifestly correct, even if such a purchaser within the meaning of the confirmatory act could be deemed a "vendee," in the absence of evidence that Russell under some former law was once entitled to such a grant.

It was suggested in the opinion in that case that the Act of March 31, 1883, did not confer right on assigns, and there would be good reason for holding that the Legislature never intended to confer on purchasers at sales under execution something that could not pass thereby directly nor by estoppel; and it was said, that "it was probably considered that the title would pass to the assignee by estoppel without legislation in all instances in which it was wise that it should pass. It certainly was not politic to pass to the purchaser at execution sale any

claim the defendant in execution may have had on the charity or liberality of the sovereign.''

In the case before us, Skerrett conveyed by a deed with general warranty the original certificate, and we are of opinion that persons holding through that conveyance are entitled to hold as vendees, and that his heirs can not recover.

Mrs. Ralston has not appealed; but had she, it is evident she would not be entitled to recover, for she caused the land to be located by another certificate after it had been patented to Price.

The judgment of the District Court will be reversed; and as the case was tried without a jury, judgment will be here rendered that plaintiffs take nothing by their action, and that defendants recover costs of the District Court as well as of this court.    It is so ordered.

*Reversed and rendered.*